OPINION
Defendant-appellant, Wesley J. Blackshear, appeals from the decision of the Mahoning County Court of Common Pleas sentencing him to five years imprisonment on a charge of aggravated robbery and three years imprisonment on a firearm specification following his guilty plea.
On July 13, 2000, appellant was indicted on one count of aggravated robbery with a firearm specification and one count of receiving stolen property. These charges were the result of a robbery of Dutch Auto Body on or about May 20, 2000. Appellant originally pleaded not guilty to both charges. He subsequently changed his plea to guilty to Count 1 in accordance with a Crim.R. 11 agreement. In exchange for appellant's guilty plea, plaintiff-appellee, the State of Ohio, recommended that Count 2 be dismissed and that appellant be sentenced to three years imprisonment on the aggravated robbery charge and three years imprisonment on the firearm specification to be served consecutively. Additionally, appellee agreed that when appellant became eligible for judicial release it would not oppose his release.
On September 8, 2000, the trial court accepted appellant's guilty plea and scheduled him for sentencing following a pre-sentence investigation. Before accepting appellant's plea the court informed appellant of the rights he was giving up by pleading guilty in accordance with Crim.R. 11(C).
At appellant's sentencing hearing the court again advised appellant of the rights he was waiving before it sentenced him. The court deviated from appellee's recommendation and sentenced appellant to five years on the aggravated robbery charge and three years on the firearm specification to be served consecutively.
After sentencing appellant, the court erroneously informed appellant that he would be eligible to apply for judicial release after he served all three years on the firearm specification and six months on the aggravated robbery sentence. Once the hearing was concluded, the court realized it had misinformed appellant of when he would be eligible for judicial release and went back on the record to inform appellant of such. Appellant's trial counsel could not be located so the court appointed stand-in counsel for appellant. The court advised appellant that it had misinformed him of the time when he would be eligible to apply for judicial release. The court then told appellant that he could not apply for judicial release until he had served the three years on the firearm specification and four years on the aggravated robbery charge.
Appellant objected and asked that he be permitted to withdraw his plea. The court overruled his objection. Appellant filed his timely notice of appeal on November 9, 2000.
Appellant alleges three assignments of error, the first of which states:
 "APPELLANT'S GUILTY PLEA WAS NOT `KNOWING AND VOLUNTARY' AS REQUIRED BY CRIMINAL RULE 11(c)(2)(a) BECAUSE BOTH THE JUDGE AND TRIAL COUNSEL DID NOT UNDERSTAND THE EFFECT OF THE COURTS (sic.)SENTENCE."
Appellant argues that the trial court erred in sentencing him without his full understanding of the possible punishment. He asserts that he was never fully aware of the consequences of his guilty plea. Appellant claims that neither his lawyer nor the court informed him of the possible ramifications of pleading guilty. Appellant maintains that he was unaware that he would not be eligible for judicial release in six months if the court deviated from appellee's recommended sentence.
Crim.R. 11(C) governs the acceptance of a guilty plea in a felony case. Before accepting a guilty plea the court must personally address the defendant and do all of the following:
 "(a) Determin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 "(b) [Inform] the defendant of and determin[e] that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 "(c) [Inform] the defendant and determin[e] that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." Crim.R. 11(C)(2).
In accepting a plea of guilty, a trial court need only substantially comply with the mandates of Crim.R. 11(C). State v. Stewart (1977),51 Ohio St.2d 86, 92. Although literal compliance with Crim.R. 11 is preferred, the fact that the trial court did not strictly comply with Crim.R. 11 does not require the reviewing court to vacate the defendant's guilty plea if the court determines that there was substantial compliance. State v. Nero (1990), 56 Ohio St.3d 106, 108. Substantial compliance is a totality of circumstances test. The defendant must subjectively understand the implications of his plea and the rights he is waiving. Stewart, supra; State v. Carter (1979), 60 Ohio St.2d 34, 38, certiorari denied (1980), 445 U.S. 963. The defendant who challenges his plea must also show a prejudicial effect. Stewart, supra, at 93; Crim.R. 52(A).
The record supports the conclusion that appellant entered his plea knowingly and voluntarily. Appellant knew there was a possibility that he could be sentenced to up to ten years on the robbery charge. Appellant was given a petition to enter a plea of guilty, which indicated that the court could sentence him from anywhere between three and ten years on the robbery charge, that a prison term was presumed necessary, and that a three year sentence on the firearm specification was mandatory. He signed the form indicating that he was withdrawing his former plea and entering plea of guilty freely and voluntarily with full understanding of the nature of the charges.
Furthermore, the trial court advised appellant personally and on the record of the potential sentences he faced both before allowing appellant to change his plea and again before sentencing appellant. The court also explained to appellant that although appellee made a sentence recommendation, the court was not obligated to follow the recommendation and was free to impose any term of imprisonment it determined appropriate up to ten years. The court also advised appellant regarding the various rights he was giving up and asked him several times if he had any questions, to which he responded in the negative.
It was not until after the court accepted appellant's change of plea and sentenced appellant that the court mistakenly agreed with appellant's counsel regarding when appellant would be eligible for judicial release.
At the change of plea hearing, the following relevant dialogue was exchanged:
 "THE COURT:You also understand that even with the terms of the agreement that is being recommended to the court, that the court, the Judge, always reserves the right to sentence you. And they have told me what the prosecutor is going to recommend and what your lawyer basically got the prosecutor to agree to. But I want you to understand that at the time of sentencing, the Judge is the one that does the sentencing. It doesn't matter what these two say. Do you understand that?
"THE DEFENDANT: Yes, sir.
 "THE COURT: And that the court can sentence you up to ten years on the aggravated robbery and give you a $20,000 fine. There is no mandatory fine on this?
"MR. MACEJKO: No, Judge.
 "THE COURT: Okay. And also on the gun specification, that's mandatory that you are going to do the three years. Do you understand that on the gun specification?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Do you have any questions at all about the sentence that the court can impose on you?
"THE DEFENDANT: No, sir.
"* * *
 "THE COURT: Has anybody threatened you or promised you anything in exchange for your plea today?
"THE DEFENDANT: No, sir.
"THE COURT: Do you have any questions at all?
 "THE DEFENDANT: No, sir." (Change of Plea Tr. 9-10, 12).
The fact that appellant's counsel may have initially informed appellant that he would be eligible to petition for judicial release after serving three years and six months in prison does not negate the fact that the court went to great lengths to ensure that appellant entered his plea knowingly and voluntarily. The totality of the circumstances indicate that appellant knew he was subject to a potential prison term of up to ten years on the robbery charge in addition to the mandatory three years on the firearm specification. The totality of the circumstances also indicate that appellant was well aware of the fact that the court was not obligated to follow appellee's recommendation under which he would have been eligible for judicial release after three years and six months.
Thus, appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "APPELLANT WAS DEPRIVED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, SECTION 10
OF THE OHIO CONSTITUTION WHEN TRIAL COUNSEL FAILED TO CORRECT THE COURT'S MISUNDERSTANDING OF IT'S (sic.) SENTENCE AND EXPLAIN THE EFFECTS OF THAT SENTENCE TO APPELLANT."
After sentencing appellant, the court stated to appellant that he would be eligible to petition for judicial release after serving the three years on the firearm specification and six months of the robbery sentence. The trial judge asked appellant's counsel if this information was correct. Appellant's counsel responded in the affirmative. The court later corrected this error by informing appellant that he would not be eligible to ask for judicial release until serving the three years on the firearm specification and four years on the robbery sentence. When the court called appellant back to correct the misunderstanding, appellant's appointed counsel could not be located. Therefore, the court appointed stand-in counsel for appellant.
Appellant argues that his trial counsel was deficient since he failed to properly inform appellant and the court of the ramifications of his sentence.
To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984), 466 U.S. 668,687; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different.Bradley, supra, at paragraph three of the syllabus.
Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279, 289. In Ohio, a licensed attorney is presumed competent. Id.
Regardless of whether counsel's performance was deficient, appellant cannot meet the second prong of the Strickland test. Appellant was not prejudiced by his counsel's performance. Even if appellant was under the impression from his counsel that he would be sentenced to only three years and then be eligible for judicial release, the court made it abundantly clear before it accepted his change of plea that his punishment was at the court's, and only the court's, discretion. The court made it clear to appellant that it did not matter what sentence his counsel and appellee agreed to. The court was careful to set out the minimum, maximum and mandatory sentences appellant faced. The court also asked appellant four times before accepting his plea whether he had any questions to which he replied "no." It was not until after sentence was imposed that it was incorrectly explained to appellant when he would be eligible for judicial release. Thus, no prejudice can be shown.
Accordingly, appellant has not demonstrated that he was prejudiced by his counsel's performance. Therefore, appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO GRANT DEFENDANT-APPELLANT'S MOTION TO WITHDRAW HIS PLEA AFTER SENTENCING OR TO EVEN HAVE A HEARING ON THE MERITS OF THE MOTION."
Appellant argues that the trial court should have permitted him to withdraw his guilty plea after sentencing since both his counsel and the court were mistaken as to the ramifications of his sentence. At the very least, appellant argues, the court should have held a hearing to determine if his motion to withdraw his plea had merit.
Crim.R. 32.1 states, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The burden of establishing manifest injustice is on the movant. State v.Smith (1977), 49 Ohio St.2d 261, at paragraph one of the syllabus. The burden is on the movant in order to discourage a defendant from pleading guilty to test the weight of the potential sentence, and later withdrawing the plea if the sentence was unexpectedly severe. State v.Caraballo (1985), 17 Ohio St.3d 66, 67.
Whether or not to grant a Crim.R. 32.1 motion is within the trial court's sound discretion. Smith, supra, at paragraph two of the syllabus. Therefore, an appellate court may not reverse the trial court's decision absent an abuse of discretion. Caraballo, supra. Abuse of discretion connotes more than an error in law or judgment; it implies that the trial court's judgment was unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
A trial court is not required to have a hearing on a post-sentence motion to withdraw a guilty plea if the facts alleged by the defendant and accepted as true by the trial court would not require the court to allow the withdrawal of the plea. State v. Blatnik (1984),17 Ohio App.3d 201, 202. In the case sub judice, appellant did not allege any facts of which the trial court was unaware. Nor did appellant assert any facts accepted as true by the court that required the court to allow appellant to withdraw his plea.
When the court informed appellant that he would be required to serve the three year firearm sentence and four years of the five year aggravated robbery sentence before he would become eligible for judicial release, appellant stated that his attorney advised him that he would only be required to serve three years. However, as discussed above, before appellant changed his plea the court questioned appellant regarding his understanding of entering a guilty plea. The court asked appellant if anyone had promised him anything to which he replied "no." The court also explained to appellant that it did not matter what his counsel and appellee agreed to because the court had the final say on his sentence. Appellant told the court that he understood this. The court further explained to appellant that the three years on the firearm specification was mandatory and that it could sentence him for up to ten years on the aggravated robbery charge. Appellant told the court that he had no questions regarding the sentence the court could impose on him. It appears that appellant merely had a change of heart when he realized that his sentence was more severe than he had expected it to be.
Accordingly, the trial court did not abuse its discretion in overruling appellant's motion to withdraw his plea. Thus, appellant's third assignment of error is without merit.
For the reasons stated above, the decision of the trial court is hereby affirmed.
VUKOVICH, J., and WAITE, J., concurs.